UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EBONY KELLEY, an individual,

    *Plaintiff,*

v.

    CASE NO.:

ALLEGIANT AIR, LLC d/b/a ALLEGIANT AIRLINES, a Nevada limited liability company,

    *Defendant.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ebony Kelley, through undersigned counsel, files this Complaint against Allegiant Air, LLC d/b/a Allegiant Airlines and states:

## INTRODUCTION

1. Allegiant is a low-cost U.S. airline. Ebony is a black woman who worked for Allegiant. Allegiant fired Ebony after she reported racial discrimination to Allegiant management, Human Resources, and the Company's then CEO.

2. This is an action for race discrimination and retaliation in violation of 42 U.S.C. § 1981.

## PARTIES

3. Ebony is a resident of Maricopa County, Arizona.

4. Allegiant is a limited liability company organized under Nevada law with operations throughout the United States.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under 42 U.S.C. § 1981.

6. This Court has personal jurisdiction over Allegiant because Allegiant continuously conducts business within this District.

7. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Allegiant is subject to personal jurisdiction in this District and because the acts complained of and giving rise to the claims occurred in this District

## GENERAL ALLEGATIONS

**Ebony's Work at Allegiant**

8. Ebony joined Allegiant in March 2021 as a Customer Service Agent ("CSA") based at the Clearwater/St. Petersburg Airport in Clearwater, Florida.

9. Early in her tenure, Ebony was entrusted with working the gates. Among CSA's, this was considered a relatively high level of responsibility.

10. In December 2021, Ebony expressed interest in working in operations. Because of her competency and track-record, Angela Peterson – the General Manager of Allegiant's operations at the airport - agreed to promote Ebony into an airline operations position.

11. This promotion was short-lived. From her first day in operations, Ebony's supervisors – all white – told her that she was not qualified for the position,

would not make it, and that they would send her back to customer service. These statements were made by Melissa Simmons and Mark Small.

12. When a wave of COVID infections hit the operations team, Ebony was essentially the only person remaining at work. Nobody trained Ebony on her new responsibilities. After less than a month, Ebony was sent back to customer service.

13. Ebony continued to seek opportunities for advancement and continued to be denied.

14. In February 2022 and again in approximately April 2022, Ebony applied to be a CSA Lead. She was rejected. To her knowledge, all of the candidates hired or promoted into the CSA Lead position during this timeframe were white.

**Racism Ebony Experienced at Allegiant**

15. Ebony was constantly dehumanized by her white peers. Co-workers and Allegiant management frequently approached Ebony to pet her like a dog and harass her about her afro.

16. A white Allegiant employee named Janelle frequently made racist comments and 'jokes'. These included:

   a. Explaining to Ebony that black people fear chainsaws because they make the noise, "Run nigger nigger nigger";

   b. Claiming she (Janelle) got sick after Ebony touched her because it was the first time she had ever been touched by a black person;

   c. Telling Ebony that the reason George Washington is the only white person with the last name Washington is because he owned slaves; and

   d. Entering Ebony's car, after Ebony briefly exited her vehicle, to turn off the music playing because it was "too ghetto".

17. In August 2022, after months of harassment and humiliation, Ebony confronted Janelle and told her that her so-called jokes were not funny but were incredibly offensive and racist.

18. Janelle's racist conduct continued. Approximately one week later, Janelle stated to her co-workers that they needed to get this "nigger bitch" fired. That was a clear reference to Ebony.

19. In November 2022, Ebony reported this behavior to the General Manager, Ms. Peterson. Ms. Peterson did nothing to address the harassment. Instead, she told Ebony that she should be flattered by the attention to her hair and that she also wanted to touch Ebony's afro.

**Ebony's Separation from Allegiant**

20. On or about December 18, 2022, Allegiant Human Resources Ana Mortimer contacted Ebony's supervisor requesting to speak with Ebony about a complaint *against her*.

21. Janelle had complained to Human Resources about an incident that occurred on November 20, 2022.

22. Per Ms. Mortimer, Janelle complained that *Ebony* had made racial slurs towards her (Janelle). Confused, Ebony asked what "racial slurs" she had said. Ms. Mortimer replied that Ebony had allegedly called Janelle "racist." This allegation was the subject of the Human Resources investigation.

23. Ebony explained that she had previously told Janelle that her actions and comments were racist. But Ebony denied calling Janelle a racist during that *specific* encounter on November 20, 2022.

24. Ms. Mortimer asked Ebony to submit a statement to Human Resources so an investigation could be conducted.

25. Ebony submitted her statement. Ebony's statement detailed both the interaction that took place on November 20, 2022 and Janelle's history of racist behavior towards Ebony and other employees.

26. In late December of 2022, Ebony sent an email to then-Allegiant CEO Maurice Gallagher explaining her situation and the racism she had encountered while working at Allegiant.

27. Mr. Gallagher did not respond to Ebony. However, Mr. Gallagher clearly received the email because he informed Ms. Mortimer and Ms. Peterson about the email.

28. Within a day or two of Ebony sending this email, she was required to participate in a conference call as part of Allegiant's investigation into her alleged misconduct.

29. During this conference call, Ms. Mortimer and Ms. Peterson indicated that the conference call had been prompted by Ebony's email to "Maury".

30. Within days of this conference call, Allegiant suspended Ebony pending the outcome of its investigation. Janelle was not suspended.

31. On December 28, 2022, Allegiant terminated Ebony, alleging that Ebony had engaged in misconduct.

32. Janelle was neither terminated nor reprimanded in any meaningful way.

## COUNT I – VIOLATION OF § 1981 (RACE DISCRIMINATION)

33. Plaintiff repeats and realleges Paragraphs 1 through 32 as if fully set forth herein.

34. The discriminatory conduct – including, without limitation, Janelle's racist actions detailed above, as well as the Defendant's employees' racist conduct regarding Plaintiff's afro – constitutes discrimination on the basis of race.

35. Plaintiff suffered adverse employment action when Defendant suspended and fired her.

36. But for Plaintiff's race, Defendant would not have engaged in such conduct.

37. By discriminating against Plaintiff on the basis of her race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981).

38. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. Further, Defendant's management countenanced or approved of the racial discrimination, as exhibited by Defendant's failure to discipline Janelle for her racist conduct and Ms. Peterson's failure to address, as well as her participation in, the racist behavior regarding Plaintiff's afro.

39. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

40. Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

### COUNT II –VIOLATION OF § 1981 (RETALIATION)

41. Plaintiff repeats and realleges Paragraphs 1 through 32 as if fully set forth herein.

42. Plaintiff complained of the racial discrimination she endured to numerous superiors, including her direct manager, human resources, and Defendant's CEO.

43. Plaintiff's complaints constituted a protected activity.

44. Shortly after Plaintiff reported her concerns to management, human resources, and the Company's CEO, Defendant retaliated against Plaintiff by suspending and then firing her.

45. But for Plaintiff's race, Defendant would not have engaged in these adverse employment actions.

46. By retaliating against Plaintiff on the basis of her race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981).

47.     Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. Defendant's management and human resources agents directly countenanced or approved of the retaliation against Plaintiff, as evidenced by, among other things, the suspension and termination of Plaintiff while a co-worker who directed slurs towards Plaintiff suffered no consequences.

48.     As a proximate and direct result of Defendant's conduct, Plaintiff has suffered and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation and other indignities.

49.     Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in her favor as follows:

a. Back and front pay resulting from Allegiant's violations of 42 U.S.C. § 1981 to the fullest extent permitted by law;

b. Compensatory damages resulting from Allegiant's violations of 42 U.S.C. § 1981 to the fullest extent permitted by law;

c. Punitive damages to punish Allegiant's violations of § 1981 to the fullest extent permitted by law;

d. Pre-judgment and post-judgment interest;

e. An award of costs and reasonable attorneys' fees; and

f. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: May 24, 2023                    Respectfully submitted,

                                                  By: */s/ Jonathan E. Pollard*
                                                      Jonathan E. Pollard
                                                      Florida Bar No.: 83613
                                                      jpollard@pollardllc.com
                                                      **LEAD COUNSEL**

                                                      Christopher S. Prater
                                                      Florida Bar No.: 105488
                                                      cprater@pollardllc.com

                                                      Michael A. Boehringer
                                                      Florida Bar No.:1018486
                                                      mboehringer@pollardllc.com

                                                      **Pollard PLLC**
                                                      401 E. Las Olas Blvd., #1400
                                                      Fort Lauderdale, FL 33301
                                                      Telephone: 954-332-2380
                                                      Facsimile: 866-594-5731

                                                      *Attorneys for Plaintiff Ebony Kelley*