UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EBONY KELLEY,

    Plaintiff,

v.                                             Case No. 8:23-cv-1162-WFJ-SPF

ALLEGIANT AIR, LLC,

    Defendant.
_____/

## ORDER

Before the Court are Plaintiff's Motion to Compel Deposition (Doc. 24) and Motion to Compel Discovery (Doc. 25). Defendant has filed responses in opposition to Plaintiff's motions (Docs. 31, 32). Upon consideration, the Court finds that Plaintiff's Motion to Compel Deposition should be DENIED and Plaintiff's Motion to Compel Discovery should be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff initiated this action in May 2023, bringing claims against Defendant Allegiant Air, LLC ("Allegiant"), her former employer, for race discrimination and retaliation in violation of 42 U.S.C. § 1981 (Doc. 1). While employed by Allegiant at the St. Pete-Clearwater International Airport ("PIE"), Plaintiff alleges that she was frequently harassed by a co-worker, Jennelle Buch, who regularly made racist comments to her (*Id.*, ¶ 15). Plaintiff alleges that she reported this behavior in November 2022 to Angela Peterson, Allegiant's General Manager at PIE, but Ms. Peterson did nothing to address the harassment (*Id.*, ¶ 19). In December 2022, Employee Relations Specialist-III Anna Mortimer contacted Plaintiff and informed her that she was investigating allegations of racism against Plaintiff, as Ms. Buch

had made a formal complaint about her to Human Resources (*Id.*, ¶¶ 20–22). Plaintiff was then suspended without pay pending Allegiant's investigation into her conduct (*Id.*, ¶ 30). On December 28, 2022, Allegiant terminated Plaintiff for dishonesty during an internal investigation (*Id.*, ¶ 30). Ms. Buch was neither terminated nor reprimanded (*Id.*, ¶ 31).[1]

## LEGAL STANDARD

Rule 37 standard Motions to compel discovery are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). Discovery under the Federal Rules is governed by the principle of proportionality. Federal Rule of Civil Procedure 26(b)(1) defines the scope of discoverability as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant. *Moore v. Lender Processing Servs. Inc.*, No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013). "A party resisting discovery must establish 'lack of relevancy or undue burden in supplying the requested information.'" *Craig v. Kropp*, No. 2:17-cv-180-FtM-99CM, 2018 WL 1121924, at *3 (M.D. Fla. Mar. 1, 2018) (quoting *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000)).

---

[1] Defendant disputes these allegations. (*See generally* Doc. 34).

2

## MOTION TO COMPEL DEPOSITION

First, Plaintiff moves to compel the deposition of Defendant's CEO, Maurice Gallagher. During the course of Defendant's investigation into Ms. Buch's complaint—and a few hours after her suspension—Plaintiff sent an email to Mr. Gallagher[2] that stated:

> Hi Maury. My name is Ebony Kelley from pie International. Employee number 18519. I have been wanting to contact you for a while about the ongoing racial tensions here at allegiant. I really love working with allegiant but it's out of control how situations are handled here. I've been dealing with racism and all the stereotypes that go with it since I've started. Anytime I mentioned it, it was swept under the rug as me overreacting. I recently addressed a co worker about their racist comments and then I was placed on suspension pending investigation. I have been dealing with this stupid topic my entire life. Every [sic] since I was born as a brown baby. I am hurt. I feel let down and extremely offended that I am the one accused of such acts. I was wondering if you could possibly contact me so I can tell my story. Honestly I don't want to work in such a racially hostile environment anymore but I feel by communicating with you, it can prevent future incidents.

(Doc. 24-1). After receipt of the email, Mr. Gallagher forwarded the email to Rebecca Henry (Defendant's Senior Vice President and Chief Human Resources Officer) and John Pepper (Defendant's Vice President of Corporate Development).[3] Mr. Gallagher's email stated: "R. See below. Have u [sic] seen this. M." (*Id.*). After forwarding this email, Mr. Gallagher had no further interaction with Plaintiff.

"Requests to depose high level corporate officers, as here, are commonly referred to as 'apex' depositions and there is a considerable body of jurisprudence addressing the circumstances concerning when it is appropriate to depose the top executive in a company."

---

[2] At the time of the email, Mr. Gallagher was Defendant's Chairman of the Board and Executive Chairman (Doc. 34, ¶ 59).

[3] Defendant represents that the email was likely sent to Mr. Pepper in error, and was likely intended to be sent to John Redmond, who was Defendant's CEO at the time (Doc. 31 at 2 n.1).

3

*Chick-Fil-A, Inc. v. CFT Dev., LLC*, No. 5:07-CV-501-OC-10GRJ, 2009 WL 928226, at *1 (M.D. Fla. Apr. 3, 2009). Courts have held that "[i]t may be appropriate to enter orders limiting depositions of senior management and other high level decisionmakers who are removed from the daily subjects of litigation." *Faro Techs., Inc. v. Romer, Inc.*, No. 6:06-cv-13-Orl-19KRS, 2007 WL 496615, at *4 (M.D. Fla. Feb. 12, 2007) (quotations omitted). "The rationale is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *Sher v. Raytheon Co.*, No. 8:08-cv-889-T-33AEP, 2010 WL 11507786, at *1 (M.D. Fla. Mar. 10, 2010) (quotations omitted). Thus, if a party seeks an apex deposition, it must show that the apex deponent has "unique knowledge of the issues in the case or the information sought has been pursued unsatisfactorily through less intrusive means." *Goines v. Lee Memorial Health Sys.*, No. 2:17-cv-656-FTM-29CM, 2018 WL 3831169, at *4 (M.D. Fla. Aug. 13, 2018).

Plaintiff argues that Mr. Gallagher is a fact witness possessing unique knowledge of the issues in this case. Defendant responds that Mr. Gallagher's receipt and forwarding of Plaintiff's email is an insufficient rationale to compel the deposition of its top executive. The Court agrees.

Courts in this district have held that a Plaintiff who merely sends correspondence to a high-level officer has not established that that officer has unique knowledge of the issues in the case. *See Bernstein v. Asbury Auto. Grp., Inc.*, No. 3:19-cv-1175-BJD-JRK, 2021 WL 1390005, at *5 (M.D. Fla. Apr. 13, 2021) ("The fact that Plaintiff sent correspondence to Mr. Hult does not alone show that Mr. Hult has any unique or personal knowledge surrounding Plaintiff's claims."); *see also Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 3:09-cv-298-J-34TEM, 2010 WL 11505066, at *2 (M.D. Fla. Oct. 29, 2010) ("Although Plaintiff maintains

4

he sent Mr. Burkhart correspondence regarding his complaint(s) of discrimination, this fact alone does not reveal that Mr. Burkhart has any unique personal knowledge of the facts that underlie the dispute, or that Plaintiff's desired information could not be garnered from equally or more knowledgeable subordinates."). The fact that Mr. Gallagher forwarded Plaintiff's correspondence to others at the company does not alter this analysis. *See Chick-Fil-A, Inc.*, 2009 WL 928226, at *2 (denying motion to compel deposition of Plaintiff's COO where it was undisputed that the COO never responded to the letter at issue and responses were sent by Plaintiff's Senior Vice President of Real Estate).

Moreover, the Court notes that Plaintiff did not attempt to obtain the information through less intrusive means. Plaintiff has deposed Anna Mortimer, Defendant's Employee Relations Specialist; PIE General Manager Angela Peterson; and Jennelle Buch, the former co-worker who made allegations against Plaintiff. Plaintiff has not sought to take the deposition of one of Defendant's representatives pursuant to Rule 30(b)(6). Plaintiff also did not question Ms. Mortimer about the email at issue (which was ultimately forwarded to her). And Plaintiff has not propounded any interrogatories about the email. Accordingly, the Court will not compel the deposition of Defendant's CEO.

## MOTION TO COMPEL DISCOVERY

In her Motion to Compel Discovery, Plaintiff asks the Court to enter an order (1) compelling Defendant to respond to Interrogatory No. 8; (2) compelling Defendant to verify its interrogatory responses; and (3) overruling Defendant's objections to Plaintiff's requests for production and compelling Defendant to provide documents responsive to Plaintiff's requests.

On June 23, 2023, Plaintiff served Defendant with her First Request for Production of Documents (Doc. 25-2) and First Set of Interrogatories (Doc. 25-1). On July 24, 2023, Defendant served its Objections and Responses to Plaintiff's First Request for Production (Doc. 25-5) and its Answers to Plaintiff's First Set of Interrogatories (Doc. 32-1). In August 2023, counsel for the parties participated in an extensive discovery conferral, after which Defendant sent Plaintiff an email summarizing the conferral and detailing the ways in which Defendant, as a compromise, could amend or supplement its discovery responses. In November 2023, counsel for Plaintiff responded to this email, largely rejecting Defendant's proposed compromises. As a result, Defendant served its Objections and Supplemental Responses to Plaintiff's First Request for Production (Doc. 32-2) and its Objections and Supplemental Answers to Plaintiff's First Set of Interrogatories (Doc. 25-3). On January 4, 2024, the parties had an additional conferral regarding Defendant's discovery responses. As a result, on January 8, 2024, Defendant served its Objections and Second Supplemental Responses to Plaintiff's First Request for Production (Doc. 25-4) and produced additional documents. Plaintiff then filed this Motion to Compel Discovery (Doc. 25).

Interrogatory No. 8:

In Interrogatory No. 8, Plaintiff asked Defendant:

> List the full name, last known address, telephone number, e-mail address, and business title (if any) of all Persons You have communicated with regarding Plaintiff since her termination from Allegiant. For each Person listed, describe in detail the content of the Communication, the date of Communication, who was involved in each such Communication, and the method of Communication (e.g., email, letter, telephone, text message, LinkedIn message, etc.).

(Doc. 25-3). In response, Defendant objected to the Interrogatory because it "seeks documents protected by the attorney-client privilege and/or work product doctrine." (*Id.*).

During good-faith discussions, Defendant offered to respond to the Request if Plaintiff limited the scope to "written communications by management- and Employee Relations-level individuals identified in the Complaint, between 12/9/22, the day after Plaintiff's termination, and 01/19/23" (Doc. 25 at 3).  Plaintiff rejected this proposal on the grounds that Defendant waived any non-privilege objections by failing to timely raise them.  In its Response to Plaintiff's Motion to Compel (Doc. 32), Defendant argues that the Request is overly broad, based on the definitions contained in Plaintiff's Interrogatories.  In particular, Defendant takes issue with the definition of "You," which means "Allegiant," which in turn includes "Allegiant Air, LLC as well as its subsidiaries, parents, divisions, affiliates, joint ventures, operating divisions, partners, officers, directors, members, employees, independent contractors, agents, or other Persons acting or purporting to act on its behalf, past or present" (Doc. 25-1 at 2–3).

The Court agrees that Defendant waived any non-privilege objections to Interrogatory No. 8 by failing to timely raise them.  *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *United States v. Wilkins*, No. 8:14-cv-993-T-17JSS, 2017 WL 4182342, at *1 (M.D. Fla. Sept. 21, 2017) (same).  Nonetheless, the Court agrees that the scope of this Interrogatory is overly broad and it would be unduly burdensome for Defendant to answer this Interrogatory as written.  *See Hay v. ALH Admin. Servs., LLC*, No. 6:16-cv-484-Orl-18DCI, 2017 WL 10058555, at *3 (M.D. Fla. Feb. 24, 2017) ("[E]ven if the Court were to find that Plaintiff's objections lacked the requisite specificity, the Court would still only compel what was reasonable under the circumstances.").  As a result, Defendant shall respond to the Interrogatory, but shall only be required to list Persons that the following individuals have communicated with about

Plaintiff: Angela Peterson, Reinaldo Berrios, Jennelle Buch, Valentina Zacco, Carlos Huertas, Kalista Stone, Anna Mortimer, Phillip Marran, Szilvia Nemeth, Maurice Gallagher, Rebecca Henry, and Adriana Ramirez.  Defendant shall not be required to list any privileged communications about this litigation or Plaintiff's EEOC complaint.

Accordingly, Plaintiff's request to compel Defendant to fully respond to Interrogatory No. 8 is GRANTED IN PART and DENIED IN PART as set forth above.

Interrogatory Verification:

Next, Plaintiff moves to compel Defendant to verify its Supplemental Interrogatory Responses.  Defendant represents that it provided the executed verification page to Plaintiff on January 19, 2024.  As a result, Plaintiff's motion to compel Defendant to verify its Supplemental Interrogatory Responses is DENIED AS MOOT.

Request for Production No. 8:

In Request for Production No. 8, Plaintiff requested:

> All Documents discussing, referring to, mentioning, or reflecting Your investigation into or response to complaints and reports by Allegiant agents or employees at Your Clearwater/St. Petersburg Airport in Clearwater, Florida location regarding harassment, discrimination, racism, the working environment at the Clearwater/St. Petersburg Airport in Clearwater, Florida, or Jannelle Buch.

(Doc. 25-4).  Defendant objected to this Request as overly broad, unduly burdensome, not narrowly tailored to the issues in the lawsuit, and disproportional to the needs of the case because it seeks "all" documents without attempting to define the terms "agents" or "employees" and without limiting the request to documents that may be relevant to the allegations in Plaintiff's Complaint.  In its Supplemental Response, Defendant stated that, subject to the foregoing objections and in accordance with the parties' discovery conferral,

"none known regarding Ms. Buch other than what has already been produced in response to Request No. 7." (*Id.*).

Plaintiff argues that Defendant has raised only improper boilerplate objections and by attempting to stretch the meaning of ordinary terms like "agents and employees." Plaintiff further argues that the materials sought by this request are discoverable and relevant to this action as they go to the intent and motive of Defendant and the decisionmakers involved in this case. In particular, the same superiors involved in the investigation surrounding Plaintiff would likely be involved in these other complaints. Plaintiff also argues that the documents requested are relevant to Defendant's affirmative defenses stating that the alleged conduct is contrary to its policies. Defendant responds that Plaintiff brought Section 1981 claims for race discrimination and retaliation against her individually and has brought no claims of a pattern or practice of discrimination at Allegiant. As a result, Defendant states that this Request is a "fishing expedition" and that it has already produced "all documents concerning investigations of complaints about Jennelle Buch" (Doc. 32 at 11). Defendant then requests that, in the event the Court is inclined to grant Plaintiff's request for additional documents, the scope be limited to any non-privileged investigative documents of complaints for race discrimination based on similar facts and circumstances as alleged by Plaintiff, against the same individuals as complained of by Plaintiff, and/or against the relevant decision-makers originating from the PIE airport, during the time period of Plaintiff's employment.

Here, the Court agrees that Defendant's objections are boilerplate and as a result, are waived. Objections that merely state "vague," "overly broad," or "unduly burdensome" are improper without an accompanying explanation of the specific grounds for the objection. *See Spencer v. City of Orlando, Fla.*, No. 6:15-cv-345-Orl-37TBS, 2016 WL 397935, at *2 (M.D. Fla.

9

Feb. 2, 2016) ("Objections stating that a request is 'vague,' 'overly broad,' or 'unduly burdensome' are meaningless standing alone.") (citations omitted); *see also Zurich Am. Ins. Co. v. Hardin*, No. 8:14-CV-775-T-23AAS, 2019 WL 3082608, at *4 (M.D. Fla. July 15, 2019) ("Boilerplate or general objections constitute a waiver of the objections to the discovery sought."); *Miner, Ltd v. Keck*, No. 619CV722ORL41TBS, 2019 WL 2869063, at *2 (M.D. Fla. Jul. 3, 2019). In other words, "[a] party objecting on these grounds must explain its reasoning in a specific and particularized way." *Martin v. Zale Del., Inc.*, No. 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008). [4]

Having said that, the Court also finds that Plaintiff's Request is overly broad, and will not compel Defendant to respond to the Request as written at this late stage of the litigation. *Hay*, 2017 WL 10058555, at *3. Namely, the Request is overly broad in that it includes complaints of all kinds of harassment, discrimination, and "the working environment" of Allegiant's location at PIE. Because Plaintiff alleges racial discrimination and retaliation, the Court finds that it is appropriate to limit the Request to those topics. As a result, Plaintiff's motion to compel Defendant to produce documents in response to Request for Production No. 8 is GRANTED IN PART and DENIED IN PART as follows: Defendant shall produce all documents discussing, referring to, mentioning, or reflecting its investigation into or response to complaints and reports by Allegiant agents or employees at PIE regarding racial discrimination and retaliation at PIE from January 1, 2020 through the present.

---

[4] While the Court recognizes that Defendant did more than merely list the terms "vague," "overly broad," or "unduly burdensome," Defendant's only real explanation as to why the Request was overly broad and unduly burdensome was that Plaintiff made no attempt to "limit the request to documents that are or may be relevant to the allegations in Plaintiff's Complaint." This is insufficient, as it is essentially a relevance objection repackaged as factual basis for the other objections.

10

Request for Production No. 22:

In Request for Production No. 22, Plaintiff requested "[a]ll documents sent to or from Angela Peterson regarding Plaintiff" (*Id.*). Defendant objected to the Request as overly broad, unduly burdensome, not narrowly tailored to the issues in the lawsuit, and disproportional to the needs of the case because it seeks documents "regarding Plaintiff" without an attempt to limit the request to documents that are relevant to allegations in the complaint. Defendant then stated that subject to those objections, "please see non-privileged investigative documents Defendant has agreed to produce in response to Request No. 7 of Plaintiff's First Request for Production." (*Id.*). In its Supplemental Response, Defendant added that "there are no other relevant documents other than what has already been produced and has been supplemented in response to Request No. 21."

Plaintiff argues that Defendant should be required to produce all responsive documents because Defendant's "subject to" objections are improper. Plaintiff also argues that, while she agreed to limit the scope of this Request to documents sent to or from Angela Peterson regarding "Plaintiff's performance, complaints by/about her, and issues Plaintiff had with other employees" during the parties' January 4, 2024 conferral, "Defendant's effort to further limit the scope to what it considers 'relevant' is improper" (Doc. 25 at 9). Defendant responds that it has already produced documents regarding the complaints by and about Plaintiff that are at issue in this case and has informed Plaintiff that there are no responsive documents regarding Plaintiff's training. Defendant then states that because Plaintiff was terminated for dishonesty during an internal investigation and not for performance-related reasons, documents regarding her performance are irrelevant and disproportional to the needs of the case. Finally, Defendant argues that documents concerning "issues Plaintiff had with

11

other employees" are not relevant because the only relevant issue in this case is Plaintiff's "issues" with Ms. Buch, and responsive documents regarding Ms. Buch have already been produced.

Here, the Court again finds that Defendant has raised only boilerplate objections and as a result, those objections are waived. The Court also finds that Plaintiff's offer to limit the scope of this Request to documents sent to or from Angela Peterson regarding "Plaintiff's performance, complaints by/about her, and issues Plaintiff had with other employees" is reasonable and appropriate. Accordingly, Plaintiff's motion to compel Defendant to produce documents responsive to Request for Production No. 22 is GRANTED to the extent the Court will compel Defendant to produce all documents sent to or from Angela Peterson regarding Plaintiff's performance, complaints by/about Plaintiff, and issues Plaintiff had with other employees."

Request for Production No. 30:

In Request for Production No. 30, Plaintiff requested "[a]ll photographs, audio recordings, and video recordings of Plaintiff" (Doc. 25-4). Defendant objected to the Request as overly broad, unduly burdensome, not narrowly tailored to the issues in the lawsuit, and disproportional to the needs of the case because it did not attempt to limit the request to documents that are relevant to allegations in the complaint. Defendant then stated that subject to those objections, "and as limited to management- and Employee Relations-level individuals identified in the Complaint, Defendant states as follows: None known." (*Id.*). In

its Supplemental Response, Defendant added that "there is no video recording of the November 20, 2022, breakroom incident between Ms. Buch and Plaintiff." (Doc. 25-4).[5]

Plaintiff argues that Defendant improperly limited the responsive documents to those in possession of Defendant's management- and Employee Relations-level employees, and that to the extent *any* of Defendant's agents or employees possess photographs or videos of Plaintiff, they are discoverable. Defendant responds that this request is overly burdensome, as there are hundreds of employees working for Defendant at PIE Airport.

Here, the Court finds that Defendant has again raised only boilerplate objections. Nonetheless, the Court finds that Defendant's proposed compromise to management and Employee Relations-level employees is reasonable and appropriate considering the number of Allegiant employees at PIE. As a result, Plaintiff's request to compel Defendant to produce additional documents in response to Request for Production No. 30 is DENIED.

Requests for Production Nos. 36–43:

In Requests for Production Nos. 36–43 Plaintiff requested the following:

36. Your profit and loss statements from 1/1/2022 through the present.
37. Your income statements from 1/1/2022 through the present.
38. Documents sufficient to show Your current assets and liabilities.
39. Documents sufficient to show Your current accounts receivable.
40. Documents sufficient to show Your current accounts payable.
41. All corporate tax returns (complete with all schedules attached) for 2021, 2022, and 2023.
42. All quarterly and annual financial statements and reports from 2022 and 2023.
43. Your current balance sheets.

---

[5] During the parties' conferral, Plaintiff agreed to narrow this Request so that it does not seek security footage except for that within the breakroom during the incident between Ms. Buch and Plaintiff that occurred on November 20, 2022. Defendant has represented that no such video footage exists. At this point, Plaintiff seeks any photographs, audio recordings, and video recordings that may be in the possession of Defendant's employees.

13

(Doc. 25-4). Defendant objected to these requests as premature, arguing that financial discovery is not appropriate until after judgment.[6] Plaintiff responds that financial discovery is appropriate before judgment where, as here, the Plaintiff alleges punitive damages. *See, e.g., Petralia v. McCormick & Schmick Rest. Corp.*, No. 2:13-cv-21-FtM-29UAM, 2013 WL 12153528, at *3 (M.D. Fla. Nov. 27, 2013) ("Although financial discovery is often inappropriate until after judgment is entered, if punitive damages are sought, a defendant's financial condition becomes relevant.") (citations omitted).

In its response to Plaintiff's motion, Defendant argues that punitive damages are only available in section 1981 actions where the Plaintiff establishes that the Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, and Plaintiff cannot establish that Defendant acted with malice or reckless indifference to her federally protected rights. Defendant's argument misses the mark. Objecting to discovery requests is not the proper vehicle to test the appropriateness of a punitive damages award. *See Ward v. Estaleiro Itajai S/A*, 541 F. Supp. 2d 1344, 1359 (S.D. Fla. 2008) ("To hold that the plaintiff in an action at law may have discovery of damages is not to say that the remedy will be granted as of course, or that protection will not be given to his adversary against impertinent intrusion . . . .").

Regardless, the Court also finds that Plaintiff's proposed financial net worth discovery is overbroad. As a result, the requests shall be limited in scope. *See In re: Fiddler's Creek, LLC*, No. 2:14-CV-379-FTM-29CM, 2016 WL 3906927, at *2 (M.D. Fla. July 19, 2016)

---

[6] Defendant also objected to the requests as being overly broad, unduly burdensome, not narrowly tailored to the issues in this lawsuit, and disproportionate to the needs to the case (Doc. 25-4). For the reasons discussed throughout this Order, these objections are boilerplate, and therefore waived.

("Financial net worth discovery is relevant to a claim for punitive damages, but the scope of such discovery is within the discretion of the court."). Defendant will only be required to produce publicly available financial filings, available on their website at https://ir.allegiantair.com/overview/default.aspx.

## ATTORNEY'S FEES

Each party also requests costs and attorney's fees associated with bringing and defending the motions. Rule 37(a)(5)(A) provides that if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Court must not order payment of attorney's fees if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Hill v. Emory Univ.*, 346 F. App'x 390, 392 (11th Cir. 2009). "The burden of establishing substantial justification is on the party being sanctioned." *Sigurdsson v. DiCarlantonio*, No. 6:12-cv-920-Orl-TBS, 2013 WL 5954740, at *2 (M.D. Fla. Nov. 7, 2013). Strict adherence to Rule 37 serves to thwart "parties from flouting discovery orders." *Reed v. Fulton Cty. Gov't*, 170 F. App'x 674, 675 (11th Cir. 2006) (per curiam) (internal quotation marks and citation omitted). As such, "sanctions are imposed [under Rule 37] not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process." *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th

Cir. 1982) (per curiam).  In the end, the Court has substantial discretion in deciding whether and how to impose sanctions under Rule 37.  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997).  Here, the Court finds that reasonable people could differ as to the issues raised in Plaintiff's motions.  As a result, the parties' requests for attorney's fees are **DENIED**.

Upon consideration, the Court **ORDERS**:

(1) Plaintiff's Motion to Compel Deposition (Doc. 24) is **DENIED**.

(2) Plaintiff's Motion to Compel Discovery is **GRANTED IN PART** and **DENIED IN PART** as stated in this Order.

**ORDERED** in Tampa, Florida, on February 16, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE